IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GLORIA SIEREN,                        )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )    1:04CV00982
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of Social Security,      )
                                      )
        Defendant.                    )

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Gloria Sieren seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claims for Widows Disability Insurance Benefits and Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on May 14, 2004, when the Appeals Council concluded there was no basis to review the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

Plaintiff filed applications for Widows Disability Insurance Benefits and SSI on January 30, 2002, alleging disability as of January 1, 2000 (amended), due to seizures and headaches.[1] Plaintiff's applications were denied initially and on reconsideration, and plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ

---

[1] Plaintiff previously filed applications for Widows Disability Insurance Benefits and SSI, effective May 30, 2001. (Tr. at 25) Her claims were denied initially and on reconsideration and plaintiff took no further action. (Id.)

Russell R. Sage in Lumberton, North Carolina, on December 10, 2003, and a decision denying plaintiff's claims was issued on January 22, 2004. Plaintiff then filed a request for review. On May 14, 2004, the Appeals Council found no basis on which to review the ALJ's decision. Plaintiff filed a request for reconsideration by the Appeals Council based on a subsequently filed Medical Source Statement by Dr. Luiz Nascimento, plaintiff's treating internist, and on September 21, 2004, the Appeals Council denied plaintiff's request to reopen her case. Plaintiff then filed a request for judicial review in this Court on October 27, 2004.

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

In reaching a decision on plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 409.1520 & 416.920 (2005). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his or her age, education and work experience. Id.

In this case, the ALJ found that plaintiff met the disability insured status requirements of the Social Security Act for Disabled Widows Insurance Benefits from April of 1995 until April of 2002. (Tr. at 25) At step one of the sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2000, her alleged onset date of disability. (Id.) The ALJ did note, however, that plaintiff had made at least one unsuccessful work attempt since her alleged onset date of disability. (Id.)

The second step in the sequential evaluation process is to determine whether plaintiff has a severe impairment. A severe impairment is one which, either separately or in combination with

another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c)(2005). At steps two and three of the sequential evaluation, the ALJ found that plaintiff has the severe impairments of seizure disorder, headaches, depression, and a history of alcohol abuse, but that she does not have an impairment, or combination of impairments, that met or equaled a listing in Appendix 1, Subpart P, Regulation Number 4. (Id. at 28-29)

Moving on to step four of the sequential evaluation, the ALJ found that plaintiff retains the residual functional capacity to perform simple, routine, repetitive light work that does not require her to work with people; does not require her to climb ladders or scaffolds; and does not expose her to hazardous equipment, unprotected heights, or loud noises. (Id. at 30) Thus, the ALJ found that plaintiff does not retain the residual functional capacity to return to her past relevant work as a knitter, companion, cook, or cashier. (Id.) Finally, at step five of the sequential evaluation, the ALJ concluded that, considering the testimony of a Vocational Expert ("VE"), there are a significant number of jobs in the national economy which plaintiff is capable of performing. (Id. at 31) Such jobs include "photo processing," with 1,400 jobs in North Carolina, "office equipment operator," with 2,200 jobs in North Carolina, "non-governmental mail clerk" with 1,200 jobs in North Carolina, and "library aid," with 900 jobs in North Carolina. (Id.) Accordingly, the ALJ found that plaintiff was not under a "disability," as such is defined by

the Social Security Act, 20 C.F.R. §§ 404.1520 & 416.920 (2005), at any time between January 1, 2000, her alleged onset date of disability, and January 22, 2004, the date of the ALJ's opinion. (Id.)

**I.**

In this action for judicial review, plaintiff first argues that the ALJ committed reversible error by not finding that plaintiff's severe impairment of seizure disorder meets or equals Listing 11.02, Epilepsy, at step three of the sequential evaluation. (Docket No. 13, Pl.'s Br. at 5-6) In order to meet Listing 11.02, plaintiff must demonstrate:

> 11.02 *Epilepsy--convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.*
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 11.02 (2005).[2] The Court finds that the ALJ's determination that plaintiff's impairment of seizure disorder does not meet or equal Listing 11.02, or any Listing, is supported by substantial evidence.

---

[2] Plaintiff claims that her seizure disorder is documented by an abnormal EEG on April 19, 2002. (Docket No. 13, Pl.'s Br. at 5, citing tr. at 219) In fact, the EEG in question was read by Dr. Albert Binn, Attending Electroencephalographer, as "borderline abnormal for left temporal slowing," with "discharges . . . not seen consistently enough to be definitively labeled as abnormal." (Tr. at 219) Another EEG which plaintiff underwent on January 2, 2003 and a 24-hour ambulatory EEG which plaintiff underwent on April 30, 2003 were both interpreted as normal (Id. at 259, 285)

-5-

Plaintiff fails to show the ALJ erred in not specifically calling a medical expert to testify at the hearing. In the first place, the Court notes that it is plaintiff's burden at step three to produce evidence that she meets or equals a Listing. See 20 C.F.R. §§ 404.1512 & 416.912 (2005). Moreover, in this case, plaintiff's counsel did not argue at the hearing that the state agency physicians erred at the initial or reconsideration levels when they stated that plaintiff's impairment was not of Listing level severity. See Powell v. Barnhart, No. 02-7107, 2003 WL 21350581 (10th Cir. June 11, 2003)( "[given] the failure of . . . counsel to ask the ALJ to pursue the matter, we do not think the ALJ erred in failing to anticipate and assist [plaintiff's] current effort to avoid the consequences of his failure of proof under the listing.")[3] Indeed, even in her argument before this Court, plaintiff has failed to demonstrate that any physician who has examined plaintiff, including plaintiff's treating internist or

---

[3] The administrative law judge . . . is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge . . . is not bound by a finding by a State agency medical . . . consultant or other program physician . . . as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, longstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

The signature of a State agency medical . . . consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.

SSR 96-6P, 1996 WL 374180, *3 (S.S.A.)

neurologist, has opined that plaintiff's impairment meets or equals Listing 11.02, or any Listing. Instead, the evidence is clear that she does not.

The introductory paragraphs to the Neurological Impairments Listing, 20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 11.00A (2005) states that:

> Under 11.02 . . . the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 . . . evaluation of the severity of the impairment must include consideration of the serum drug levels.

In this case, plaintiff testified at the hearing that she discontinued her seizure medication for several days at a time on a periodic basis until August of 2002 in order to drink alcohol. (Tr. at 335, 344-45) Plaintiff acknowledged that she did not use her seizure medication on a regular basis until August 2002. (Id. at 345) Plaintiff further testified that after she stopped drinking alcohol in August of 2002, she did not take her seizure medication on a continual basis, but rather "when I have them," and when she ran out of a medication she "ha[d] seizures." (Id. at 352)

The ALJ found in his opinion that,

> the record shows that [plaintiff's] recurrence of seizures has been associated with being out of medication for periods of time. . . . The record shows that the [plaintiff] reported being unable to afford medication, however, she has also received samples from her physician and the drug company assistance program. No acceptable reasons for noncompliance with medication have been established.

(Id. at 29); see also id. at 209 ("pharmaceutical samples – patient indigent program"); id. at 237 ("[p]resents with med assistance forms and office to complete and submit for pt. . . . Rx given and will assist with obtaining meds.") Accordingly, the Court finds that the ALJ did not err by determining at step three of the sequential evaluation that plaintiff's "severe" impairment of seizure disorder does not meet or equal Listing 11.02, *Epilepsy*.[4]

## **II.**

Plaintiff's second and final argument before the Court is that the Appeals Council erred in not affording controlling weight to a Medical Source Statement by Dr. Nascimento, one of plaintiff's treating physicians, which was submitted after the hearing. (Docket No. 13, Pl.'s Br. at 6-8) Plaintiff argues that Dr. Nascimento's statement was not available for consideration by the ALJ, but fails to give any adequate explanation why it could not

---

[4]The Court notes that plaintiff apparently attempts to improperly expand her first argument by saying that considering all of her impairments, she must meet some listing. First, this is not a proper argument as required by the Court for the orderly disposition of Social Security cases. See Notice (docket no. 9). Second, plaintiff fails to identify the Listing. If plaintiff means Listing 11.02, then plaintiff fails to show how her other impairments created the equivalent of Listing 11.02.

-8-

have been. Nevertheless, plaintiff claims she is entitled to a new hearing. The Court disagrees.

The Appeals Council issued its original determination that there was no basis on which to review the ALJ's decision on May 14, 2004. (Id. at 15-17) Plaintiff filed a request on May 25, 2004 that the Appeals Council reconsider this determination, and included Dr. Nascimento's Medical Source Statement, which lists plaintiff's diagnoses as seizure disorder, Hepatitis C, degenerative joint disease, neuropathy, chronic obstructive pulmonary disease, and hypertension, and states that plaintiff experiences a wide range of functional limitations. (Id. at 7-14) On September 21, 2004, the Appeals Council notified plaintiff that they had found no reason to reopen their May 25, 2004 denial decision. Elizabeth C. Palacios, the Acting Administrative Appeals Judge, specifically noted that Dr. Nascimento's opinion "is neither supported by the record as a whole nor consistent with the record and does not provide a basis to change the decision of the Administrative Law Judge through the process of reopening." (Id. at 5-6)

The Regulations provide that: "We will find that there is good cause to reopen a determination or decision if– (1) New and material evidence is furnished;" 20 C.F.R. §§ 404.989 & 416.1489 (2005). However, the Regulations further note that "[t]he dismissal of a request for Appeals Council review is binding and not subject to further review." 20 C.F.R. §§ 404.972 & 416.1472 (2005). See Eggleston v. Sullivan, No. 90-1888, 1991 WL 125714, at

*2 n.2 (4th Cir. July 12, 1991)("Absent a reopening of this denied claim under 20 C.F.R. §§ 404.988 and 404.989, it is final as to disability through the date of the ALJ's decision.") See also Rudder v. Sullivan, No. 89-7093, 1991 WL 35337, at *2 (10th Cir. Feb. 27, 1991)("All circuit courts considering the issue after [Califano v. Sanders, 430 U.S. 99 (1977)] have concluded that a decision by the Secretary not to reopen is unreviewable.")  Under the Social Security Act, the Court is limited to reviewing "final decision[s] of the Secretary made after a hearing," Califano, 430 U.S. at 108, in this case the final decision of the ALJ.

Plaintiff also states the matter should be remanded because the ALJ never considered Dr. Nascimento's letter.  Of course, the ALJ could not consider it because plaintiff never presented it to the ALJ in the first place.  The Commissioner argues that the Appeals Council's decision not to reopen should not be set aside by remanding for a new hearing.  Commendably, the Commissioner cites the decision of the Fourth Circuit in Wilkins v. Secretary, Dept. of Health and Human Services, 953 F.2d 93 (4th Cir. 1991).  This decision has caused some consternation because it seemingly allows parties to sabotage the review process by withholding and introducing evidence after the hearing by essentially requiring the Appeals Council to reopen the case and consider such evidence or else remand it for a new hearing.  This has caused some conflict among the circuits.  See Riley v. Apfel, 88 F. Supp. 2d 572, 578 (W.D. Va. 2000).  The decision also requires the district court to conduct its review by considering the evidence, even though, if

such evidence were submitted to this Court, the Court would only consider it if a plaintiff could show good cause for failure to present the evidence below, meaning on a timely basis. See Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).

Some courts have considered that Wilkins stands for the proposition that if additional evidence is offered without a reopening by the Appeals Council, the district court must consider that evidence in addition to the evidence in the record to determine whether substantial evidence supports the ALJ's decision. King v. Barnhart, ___ F. Supp. 2d ____, 2005 WL 3775951 (E.D.N.C. March 31, 2005). It would seem that Wilkins requires a little more scrutiny--that is, the evidence must be new and material, not duplicative or cumulative. In Wilkins, it should be noted the evidence was new because no other evidence addressed the issue contained in the treating caregiver's opinion letter. Wilkins, 953 F.2d at 96.

In the instant case, the Appeals Council reviewed the Medical Source Statement in conjunction with the other parts of the record and found that the statement by the medical source was at odds with other evidence in the record. Furthermore, that statement was dated March 17, 2004 and claims that plaintiff had the severe restrictions since 1990. No explanation is given for this statement and, as the Appeals Council pointed out, it is contrary to other evidence in the record. It is definitely at odds with the findings of the ALJ and the consideration of the other medical records. This Medical Source Statement would appear to be

extremely exaggerated and uncorroborated. Even plaintiff did not allege disability until 1999. She last worked in 2000 or 2001. (Tr. at 336) Therefore, whatever the review required by the <u>Wilkins</u> decision, it cannot be said that the extremely uncorroborated and contradicted Medical Source Statement provides new and material evidence which is not duplicative or cumulative and is the only evidence to specifically address the conditions of plaintiff's neurological problems. Nor can it be said that it causes the ALJ's decision to not be based on substantial evidence.

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for judgment on the pleadings (docket no. 12) be denied, that defendant's motion for judgment on the pleadings (docket no. 14) be granted, and that this action be dismissed with prejudice.

*/s/ Russell A. Eliason*
**United States Magistrate Judge**

March 24, 2006